| | |
|---|---|
| April Atwood, | Civil Case No. _____ |
| *On behalf of herself and those similarly situated*, | |
| Plaintiff, | Judge _____ |
| v. | Magistrate Judge _____ |
| Tasty Hut, LLC; Tasty Restaurant Group, LLC; Tasty Hut of NC LLC; Tasty Brands, LP; Tasty Brands II, LP; Triton Pacific Capital Partners, LLC; Triton Pacific Group, Inc.; Doe Corporation 1–10; John Doe 1–10, | |
| Defendants. | Jury Demand Endorsed Hereon |

## Class and Collective Action Complaint

1.     April Atwood, on behalf of herself and similarly-situated individuals, brings this action against Defendants Tasty Hut, LLC; Tasty Restaurant Group, LLC; Tasty Hut of NC LLC; Tasty Brands, LP; Tasty Brands II, LP; Triton Pacific Capital Partners, LLC; Triton Pacific Group, Inc.; Doe Corporation 1–10; and John Doe 1–10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., North Carolina Wage and Hour Act, N.C. Gen. Stat. 95-25.1, *et seq.* and unjust enrichment under North Carolina law.

2.     Defendants own and/or operate multiple Pizza Hut locations ("Defendants' Pizza Hut franchise stores") in Illinois, Kentucky, Massachusetts, New Hampshire, New York, North Carolina, South Carolina, Tennessee, Virginia, and West Virginia.

3.     Plaintiff seeks to represent the delivery drivers who have worked at Defendants' Pizza Hut franchise stores.

4.     Defendants repeatedly and willfully violated the Fair Labor Standards Act, and the North Carolina Wage and Hour Act, N.C. Gen. Stat. 95-25.1, *et seq.*, by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5.     All delivery drivers at Defendants' Pizza Hut franchise stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

## Jurisdiction and Venue

6.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

7.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's North Carolina state law claims.

8.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events or omissions giving rise to the claim herein occurred in this district.

2

# Parties

## Plaintiff

### April Atwood

9.     Plaintiff April Atwood is a resident of Taylorsville, North Carolina in Alexander County, North Carolina.

10.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA and N.C. Gen. Stat. 95-25.1, *et seq.*

11.     Plaintiff has given written consent to join this action.

## Defendants

12.     Defendants' Pizza Hut franchise stores are owned and/or operated by a number of entities and individuals, each of whom employed Plaintiff and the Delivery Drivers.

13.     Defendants operate their Pizza Hut franchise stores as a single operation.

14.     Defendants make up some of the entities that have been created to operate the Pizza Hut franchise stores purchased by private equity group Triton Pacific Capital Partners, LLC and/or Triton Pacific Group, Inc. in recent years. *See* PR Newswire, *Triton Pacific Affiliate Completes Acquisition of 117 Pizza Hut Restaurants in $80 Million Transaction* (Dec. 17, 2019), https://www.prnewswire.com/news-releases/triton-pacific-affiliate-completes-acquisition-of-117-pizza-hut-restaurants-in-80-million-transaction-300975889.html?tc=eml_cleartime (last visited November 4, 2021) ("Triton Pacific… announced today that one of its affiliated companies has completed the acquisition of 117 Pizza Hut restaurants… located throughout the states of Illinois, Kentucky, North Carolina, South Carolina, Tennessee, Virginia and West Virginia. 'This is a significant acquisition that expands and diversifies Triton Pacific's quick service restaurant

3

holdings both geographically and by brand,' said Triton Pacific Chief Executive Officer Craig Faggen. 'We… believe this Pizza Hut acquisition strategically complements our existing portfolio while providing the opportunity for continued expansion as we establish stronger ties with major brands throughout the industry.'") (also accessible at: https://www.tritonpacific.com/news/tasty-brands-acquires-64-burger-king-locations-3z2f8); QSR Magazine, *Tasty Restaurant Group Acquires 37 Pizza Hut Locations* (November 20, 2020), https://www.qsrmagazine.com/news/tasty-restaurant-group-acquires-37-pizza-hut-locations (last accessed November 4, 2021) ("Tasty Restaurant Group, a wholly-owned affiliate of Los Angeles-based private equity firm Triton Pacific, announced that its affiliate, Tasty Hut, completed the acquisition of 37 franchised Pizza Hut restaurants…. Tasty Restaurant Group will manage the portfolio and oversee its daily operations. 'We are thrilled to expand our Pizza Hut portfolio and increase our market share within the region. The addition of these locations will enhance our existing portfolio in Virginia and West Virginia, and improve operational economies of scale,' says Craig Faggen, Triton Pacific's CEO. 'Quick service restaurants continue to perform well and have adapted to new safety and operational procedures. Pizza Hut was the first national chain to introduce contactless curbside pickup, and we are pleased to be part of an organization that puts the interests of its team members, customers and the communities it serves first.' Tasty Restaurant Group's portfolio includes 153 Pizza Hut restaurants…") (also accessible at: https://www.tritonpacific.com/news/tasty-restaurant-group-acquires-37-pizza-hut-locations).

15. Together, Tasty Hut, LLC; Tasty Restaurant Group, LLC; Tasty Hut of NC LLC; Tasty Brands, LP; Tasty Brands II, LP; Triton Pacific Capital Partners, LLC; and Triton Pacific Group, Inc. make up the Defendants' Pizza Hut operation.

4

16.     Defendants' Pizza Hut operation has the authority to and does hire and fire employees, supervise and control the work schedules and conditions of employees, determine the rate and methods of pay, and/or maintain employee records.

17.     Defendants form a "single employer" as they are part of a single integrated enterprise and/or they are joint employers as they jointly operate a chain of Pizza Hut franchise stores and maintain interrelated operations, centralized control of labor relations, common management, and common ownership and financial control. Because the work performed by Plaintiff and all other Delivery Drivers benefited all Defendants and directly or indirectly furthered their joint interests, Defendants are collectively the joint employers of Plaintiff and other similarly situated employees under the FLSA's definition of "employer."

**Tasty Hut, LLC**

18.     Tasty Hut, LLC does business in Illinois, Kentucky, Massachusetts, New Hampshire, New York, North Carolina, South Carolina, Tennessee, Virginia, and West Virginia.

19.     Upon information and belief, Tasty Hut, LLC is headquartered in Plano, Texas.

20.     Tasty Hut, LLC is a Delaware for-profit corporation.

21.     Tasty Hut, LLC is authorized to do business under the laws of Illinois, Kentucky, Massachusetts, New Hampshire, New York, North Carolina, South Carolina, Tennessee, Virginia, and West Virginia.

22.     Tasty Hut, LLC is owned and/or operated by Defendants Tasty Restaurant Group, LLC; Tasty Brands, LP; Tasty Brands II, LP; Triton Pacific Capital Partners, LLC; and Triton Pacific Group, Inc.

5

23.     Tasty Hut, LLC is one of the entities involved in owning and operating Defendants' Pizza Hut stores.

24.     Upon information and belief, along with Tasty Restaurant Group, LLC, Tasty Hut, LLC, manages the operations of Defendants Tasty Hut of NC LLC; Tasty Brands, LP; and Tasty Brands II, LP.

25.     Upon information and belief, along with Tasty Restaurant Group, LLC, Tasty Hut, LLC manages the operations of Tasty Hut of IL LLC; Tasty Hut of KY LLC; Tasty Hut Northeast, LLC; Tasty Hut of SC LLC; Tasty Hut of TN LLC; Tasty Hut of VA LLC; and Tasty Hut of WV LLC.

26.     Upon information and belief, Tasty Hut, LLC primarily functions to operate a group of stores within Defendants' Pizza Hut operation. For example, Tasty Hut, LLC is the Authorized Representative of Tasty Hut of KY LLC; a Member of Tasty Hut of NC LLC; and a Manager of Tasty Hut of IL LLC.

27.     Upon information and belief, Tasty Hut, LLC is an officer of Tasty Hut of NC LLC; Tasty Hut of IL LLC; Tasty Hut of KY LLC; Tasty Hut Northeast, LLC; Tasty Hut of SC LLC; Tasty Hut of TN LLC; Tasty Hut of VA LLC; and Tasty Hut of WV LLC.

28.     Upon information and belief, Tasty Hut, LLC owns and operates more than 182 Pizza Hut franchise stores throughout Illinois, Kentucky, Massachusetts, New Hampshire, New York, North Carolina, South Carolina, Tennessee, Virginia, and West Virginia.

29.     Tasty Hut, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

6

30.     Tasty Hut, LLC directly or indirectly controls the terms and conditions of Plaintiff's work and the work of similarly situated employees.

31.     Tasty Hut, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

32.     Tasty Hut, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

33.     Tasty Hut, LLC has been and continues to be an enterprise engaged in the "production of goods for commerce" within the meaning of the phrase as used in the FLSA.

34.     Tasty Hut, LLC has gross revenue that exceeds $500,000 per year.

**Tasty Restaurant Group, LLC**

35.     Tasty Restaurant Group, LLC does business in Texas and North Carolina.

36.     Tasty Restaurant Group, LLC's headquarters is in Plano, Texas.

37.     Tasty Restaurant Group, LLC is a Delaware for-profit corporation.

38.     Tasty Restaurant Group, LLC is authorized to do business under the laws of Texas and North Carolina.

39.     Tasty Restaurant Group, LLC is owned and/or operated by Defendants Triton Pacific Capital Partners, LLC and Triton Pacific Group, Inc.

40.     Tasty Restaurant Group, LLC is one of the entities involved in owning and operating Defendants' Pizza Hut stores.

41.     Upon information and belief, Tasty Restaurant Group, LLC functions as the nerve center for Defendants' Pizza Hut and other franchise restaurant operations. *See* Triton Pacific

7

Capital Partners, LLC, Restaurant Services, https://www.tritonpacific.com/restaurants (last visited November 4, 2021) ("Tasty Restaurant Group (TRG) has responsibility for all facets of Triton Pacific's investment strategy within the chain restaurant industry – including directing restaurant operations, supporting field teams centralized Restaurant Support Center, managing asset actions including renovation projects and new store development, and leading corporate development efforts for Triton Pacific and the Tasty Offerings.").

42.     Upon information and belief, along with Tasty Hut, LLC, Tasty Restaurant Group, LLC manages the operations of Defendants Tasty Hut of NC LLC; Tasty Brands, LP; and Tasty Brands II, LP.

43.     Upon information and belief, along with Tasty Hut, LLC, Tasty Restaurant Group, LLC manages the operations of Tasty Hut of IL LLC; Tasty Hut of KY LLC; Tasty Hut Northeast, LLC; Tasty Hut of SC LLC; Tasty Hut of TN LLC; Tasty Hut of VA LLC; and Tasty Hut of WV LLC.

44.     In addition to overseeing the ownership and operations of Defendants' Pizza Hut franchise stores, Tasty Restaurant Group, LLC is also involved in the ownership and operation of Triton's Burger King, Dunkin', and Baskin Robbins franchise operations.

45.     Tasty Restaurant Group, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

46.     Tasty Restaurant Group, LLC directly or indirectly controls the terms and conditions of Plaintiff's work and the work of similarly situated employees.

47. Tasty Restaurant Group, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

48. Tasty Restaurant Group, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

49. Tasty Restaurant Group, LLC has been and continues to be an enterprise engaged in the "production of goods for commerce" within the meaning of the phrase as used in the FLSA.

50. Tasty Restaurant Group, LLC has gross revenue that exceeds $500,000 per year.

**Tasty Hut of NC LLC**

51. Tasty Hut of NC LLC does business in North Carolina.

52. Tasty Hut of NC LLC is a Delaware for-profit corporation.

53. Upon information and belief, Tasty Hut of NC LLC is directly managed by Tasty Hut, LLC and Tasty Restaurant Group, LLC from their headquarters in Plano, Texas.

54. Tasty Hut of NC LLC is one of the entities involved in owning and operating Defendants' Pizza Hut stores.

55. Tasty Hut of NC LLC is authorized to do business under the laws of North Carolina.

56. Tasty Hut of NC LLC is owned and/or operated by Defendants Tasty Hut, LLC; Tasty Restaurant Group, LLC; Tasty Brands, LP; Tasty Brands II, LP; Triton Pacific Capital Partners, LLC; and Triton Pacific Group, Inc.

57. Upon information and belief, Tasty Hut of NC LLC primarily functions to operate a group of stores within Defendants' Pizza Hut operation.

9

58. Upon information and belief, Tasty Hut of NC LLC owns and operates 81 Pizza Hut franchise stores throughout North Carolina.

59. Tasty Hut of NC LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

60. Tasty Hut of NC LLC directly or indirectly controls the terms and conditions of Plaintiff's work and the work of similarly situated employees.

61. Tasty Hut of NC LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

62. Tasty Hut of NC LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

63. Tasty Hut of NC LLC has been and continues to be an enterprise engaged in the "production of goods for commerce" within the meaning of the phrase as used in the FLSA.

64. Tasty Hut of NC LLC has gross revenue that exceeds $500,000 per year.

**Tasty Brands, LP**

65. Upon information and belief, Tasty Brands, LP does business in Illinois, Kentucky, Massachusetts, New Hampshire, New York, North Carolina, South Carolina, Tennessee, Virginia, and West Virginia.

66. Tasty Brands, LP is a Delaware for-profit corporation.

67. Upon information and belief, Tasty Brands, LP is owned and/or operated by Defendants Tasty Restaurant Group, LLC; and Triton Pacific Capital Partners, LLC; and Triton Pacific Group, Inc.

10

68.     Tasty Brands, LP is one of the entities involved in owning and operating Defendants' Pizza Hut stores.

69.     Upon information and belief, Tasty Brands, LP along with Tasty Restaurant Group, LLC, and Tasty Brands II, LP owns and operates Defendants Tasty Hut, LLC; Tasty Hut of NC LLC; and/or stores within Defendants' Pizza Hut operation.

70.     Upon information and belief, Tasty Brands, LP along with Tasty Restaurant Group, LLC, and Tasty Brands II, LP owns and operates Tasty Hut of IL LLC; Tasty Hut of KY LLC; Tasty Hut Northeast, LLC; Tasty Hut of SC LLC; Tasty Hut of TN LLC; Tasty Hut of VA LLC; Tasty Hut of WV LLC; and/or stores within Defendants' Pizza Hut operation.

71.     In addition to overseeing the ownership and operation of Defendants' Pizza Hut franchise stores, Tasty Brands, LP is also involved in the ownership and operation of Triton's Burger King, Dunkin', and Baskin Robbins franchise operations.

72.     Tasty Brands, LP has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

73.     Tasty Brands, LP directly or indirectly controls the terms and conditions of Plaintiff's work and the work of similarly situated employees.

74.     Tasty Brands, LP maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

75.     Tasty Brands, LP is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

11

76.     Tasty Brands, LP has been and continues to be an enterprise engaged in the "production of goods for commerce" within the meaning of the phrase as used in the FLSA.

77.     Tasty Brands, LP has gross revenue that exceeds $500,000 per year.

**Tasty Brands II, LP**

78.     Upon information and belief, Tasty Brands II, LP does business in Illinois, Kentucky, Massachusetts, New Hampshire, New York, North Carolina, South Carolina, Tennessee, Virginia, and West Virginia.

79.     Tasty Brands II, LP is a Delaware for-profit corporation.

80.     Upon information and belief, Tasty Brands II, LP is owned and/or operated by Defendants Tasty Restaurant Group, LLC; Triton Pacific Capital Partners, LLC; and Triton Pacific Group, Inc.

81.     Tasty Brands II, LP is one of the entities involved in owning and operating Defendants' Pizza Hut stores.

82.     Upon information and belief, Tasty Brands II, LP along with Tasty Restaurant Group, LLC, and Tasty Brands, LP owns and operates Defendants Tasty Hut, LLC; Tasty Hut of NC LLC; and/or stores within Defendants' Pizza Hut operation.

83.     Upon information and belief, Tasty Brands II, LP along with Tasty Restaurant Group, LLC, and Tasty Brands, LP owns and operates Tasty Hut of IL LLC; Tasty Hut of KY LLC; Tasty Hut Northeast, LLC; Tasty Hut of SC LLC; Tasty Hut of TN LLC; Tasty Hut of VA LLC; Tasty Hut of WV LLC; and/or stores within Defendants' Pizza Hut operation.

84. In addition to overseeing the ownership and operation of Defendants' Pizza Hut franchise stores, Tasty Brands II, LP is also involved in the ownership and operation of Triton's Burger King, Dunkin', and Baskin Robbins franchise operations.

85. Tasty Brands II, LP has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

86. Tasty Brands II, LP directly or indirectly controls the terms and conditions of Plaintiff's work and the work of similarly situated employees.

87. Tasty Brands II, LP maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

88. Tasty Brands II, LP is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

89. Tasty Brands II, LP has been and continues to be an enterprise engaged in the "production of goods for commerce" within the meaning of the phrase as used in the FLSA.

90. Tasty Brands II, LP has gross revenue that exceeds $500,000 per year.

**Triton Pacific Capital Partners, LLC**

91. Triton Pacific Capital Partners, LLC does business in California.

92. Triton Pacific Capital Partners, LLC's principal office is in Los Angeles, California.

93. Triton Pacific Capital Partners, LLC is a California for-profit corporation.

94. Triton Pacific Capital Partners, LLC is one of the entities involved in owning and operating Defendants' Pizza Hut stores.

95.     Triton Pacific Capital Partners, LLC is authorized to do business under the laws of California.

96.     Triton Pacific Capital Partners, LLC is owned and/or operated by Defendant Triton Pacific Group, Inc.

97.     Triton Pacific Capital Partners, LLC is a private equity investment organization that recently purchased and currently owns more than 182 Pizza Hut franchise stores.

98.     Triton Pacific Capital Partners, LLC is one of the entities involved in owning and operating Defendants' Pizza Hut stores.

99.     Upon information and belief, Triton Pacific Capital Partners, LLC owns and operates Defendants Tasty Hut, LLC; Tasty Restaurant Group, LLC; Tasty Hut of NC LLC; Tasty Brands, LP; and Tasty Brands II, LP.

100.    Upon information and belief, Triton Pacific Capital Partners, LLC owns and operates Tasty Hut of IL LLC; Tasty Hut of KY LLC; Tasty Hut Northeast, LLC; Tasty Hut of SC LLC; Tasty Hut of TN LLC; Tasty Hut of VA LLC; and Tasty Hut of WV LLC.

101.    In addition to overseeing the ownership and operation of Defendants' Pizza Hut franchise stores, Triton Pacific Capital Partners, LLC is also involved in the ownership and operation of Triton's Burger King, Dunkin', and Baskin Robbins franchise operations and Triton's healthcare services operations.

102.    Triton Pacific Capital Partners, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

14

103.    Triton Pacific Capital Partners, LLC directly or indirectly controls the terms and conditions of Plaintiff's work and the work of similarly situated employees.

104.    Triton Pacific Capital Partners, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

105.    Triton Pacific Capital Partners, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

106.    Triton Pacific Capital Partners, LLC has been and continues to be an enterprise engaged in the "production of goods for commerce" within the meaning of the phrase as used in the FLSA.

107.    Triton Pacific Capital Partners, LLC has gross revenue that exceeds $500,000 per year.

**Triton Pacific Group, Inc.**

108.    Triton Pacific Group, Inc. does business in California.

109.    Triton Pacific Group, Inc.'s principal office is in Los Angeles, California.

110.    Triton Pacific Group, Inc. is a California for-profit corporation.

111.    Triton Pacific Group, Inc. is one of the entities involved in owning and operating Defendants' Pizza Hut stores.

112.    Triton Pacific Group, Inc. is authorized to do business under the laws of California.

113.    Triton Pacific Group, Inc. is owned and/or operated by Craig Faggen, Ivan Faggen, Thomas Scott, Brian Buehler, and Michael Carroll.

114.     Upon information and belief, Triton Pacific Group, Inc. primarily functions to operate Triton Pacific Capital Partners, LLC.

115.     Upon information and belief, Triton Pacific Group, Inc. is an officer of Triton Pacific Capital Partners, LLC.

116.     Upon information and belief, Triton Pacific Group, Inc. owns and operates Defendants Tasty Hut, LLC; Tasty Restaurant Group, LLC; Tasty Hut of NC LLC; Tasty Brands, LP; Tasty Brands II, LP; and Triton Pacific Capital Partners, LLC.

117.     Upon information and belief, Triton Pacific Group, Inc. owns and operates Tasty Hut of IL LLC; Tasty Hut of KY LLC; Tasty Hut Northeast, LLC; Tasty Hut of SC LLC; Tasty Hut of TN LLC; Tasty Hut of VA LLC; and Tasty Hut of WV LLC.

118.     In addition to overseeing the ownership and operation of Defendants' Pizza Hut franchise stores, Triton Pacific Group, Inc. is also involved in the ownership and operation of Triton's Burger King, Dunkin', and Baskin Robbins franchise operations and Triton's healthcare services operations.

119.     Triton Pacific Group, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

120.     Triton Pacific Group, Inc. directly or indirectly controls the terms and conditions of Plaintiff's work and the work of similarly situated employees.

121.     Triton Pacific Group, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

122.    Triton Pacific Group, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

123.    Triton Pacific Group, Inc. has been and continues to be an enterprise engaged in the "production of goods for commerce" within the meaning of the phrase as used in the FLSA.

124.    Triton Pacific Group, Inc. has gross revenue that exceeds $500,000 per year.

**Doe Corporation 1-10**

125.    Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of Defendants' Pizza Hut franchise stores, and qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Pizza Hut franchise stores as that term is defined by the FLSA and North Carolina law.

126.    Upon information and belief, Tasty Hut, LLC; Tasty Restaurant Group, LLC; Tasty Brands, LP; Tasty Brands II, LP; Triton Pacific Capital Partners, LLC; and Triton Pacific Group, Inc. own and/or operate, in whole or in part, other entities that make up part of Defendants' Pizza Hut operation.

127.    Upon information and belief, there are other entities within Defendants' Pizza Hut operation who qualify as "employers" to a number of the members of the putative FLSA collective class, including but not limited to Tasty Hut of IL LLC; Tasty Hut of KY LLC; Tasty Hut Northeast, LLC; Tasty Hut of SC LLC; Tasty Hut of TN LLC; Tasty Hut of VA LLC; and Tasty Hut of WV LLC.

128.    Upon information and belief, Craig Faggen, Ivan Faggen, Thomas Scott, Brian Buehler, and Michael Carroll own and/or operate, in whole or in part, other entities that make up part of Defendants' Pizza Hut operation.

17

129.     Upon information and belief, Triton Pacific Securities, LLC; Segel Investments, LLC; and TPIC, LP may also be liable as employers of the delivery drivers employed at Defendants' Pizza Hut franchise stores.

130.     Upon information and belief, the franchisor, Pizza Hut, Inc., may also be liable as an employer of the delivery drivers employed at Defendants' Pizza Hut franchise stores.

131.     Because Defendants have recently purchased many Pizza Hut franchise stores, upon information and belief, there may be additional companies that qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Pizza Hut franchise stores as that term is defined by the FLSA and North Carolina law that may be liable to Plaintiff and the delivery drivers at Defendants' Pizza Hut franchise stores (the "Predecessor Entities").

132.     Upon information and belief, Rage, Inc. is a Predecessor Entity that may be liable to Plaintiff and the delivery drivers at Defendants' Pizza Hut franchise stores.

133.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

134.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Pizza Hut franchise stores as that term is defined by the FLSA and North Carolina law.

135.     Upon information and belief Craig Faggen, Ivan Faggen, Thomas Scott, Brian Buehler, and Michael Carroll qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Pizza Hut franchise stores as that term is defined by the FLSA and North Carolina law.

18

136.    Because Defendants have recently purchased many Pizza Hut franchise stores, upon information and belief, there may be additional individuals that qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Pizza Hut franchise stores as that term is defined by the FLSA and North Carolina law that may be liable to Plaintiff and the delivery drivers at Defendants' Pizza Hut franchise stores (the "Predecessor Individuals").

137.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## Facts

## Common Factual Allegations

138.    During the time period relevant to this lawsuit, Defendants have operated Defendants' Pizza Hut franchise stores.

139.    Upon information and belief, Defendants have purchased more than 182 Pizza Hut franchise stores in recent years.

140.    Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at Defendants' Pizza Hut franchise stores.

141.    All delivery drivers employed at Defendants' Pizza Hut franchise stores have had essentially the same job duties.

142.    All delivery drivers employed at Defendants' Pizza Hut franchise stores worked in dual jobs—one during which they worked outside the store delivering pizzas, and another during which they worked inside the store completing general tasks.

143.    Defendants pay the delivery drivers at Defendants' Pizza Hut franchise stores at or close to minimum wage for all hours worked.

19

144. Defendants require delivery drivers at Defendants' Pizza Hut franchise stores to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

145. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, repair costs, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

146. Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

147. Because delivery drivers provided their cars to use to make deliveries, Defendants saved substantial business costs, including but not limited to commercial insurance on a fleet of automobiles, the risk and exposure associated with operating a company-owned fleet of automobiles, the time it takes to repair and maintain a fleet of automobiles, the time it takes to record vehicle-related expenses, the expertise required to evaluate whether vehicles are fit to be driven for business purposes, etc.

148. Because delivery drivers provided their cars to use to make deliveries, Defendants received substantial indirect benefits as well, such as comparative advantage in business and freeing up additional capital for investment.

20

149.    Upon information and belief, during all relevant times, Defendants reimbursed delivery drivers a set amount for each delivery they complete.

150.    Upon information and belief, during some of the relevant time period Defendants reimbursed delivery drivers a set amount for each delivery they complete.

151.    During all relevant times, Defendants' Pizza Hut franchise stores have not tracked or recorded the delivery drivers' actual expenses.

152.    During some of the relevant time period, Defendants' Pizza Hut franchise stores have not tracked or recorded the delivery drivers' actual expenses.

153.    During all relevant times, Defendants' Pizza Hut franchise stores have not collected receipts from their delivery drivers related to the expenses they incur while completing deliveries.

154.    During some of the relevant time period, Defendants' Pizza Hut franchise stores have not collected receipts from their delivery drivers related to the expenses they incur while completing deliveries.

155.    During all relevant times, Defendants' Pizza Hut franchise stores have not collected receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

156.    During some of the relevant time period, Defendants' Pizza Hut franchise stores have not collected receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

21

157. During all relevant times, Defendants' Pizza Hut franchise stores have not collected receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

158. During some of the relevant time period, Defendants' Pizza Hut franchise stores have not collected receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

159. During all relevant times, Defendants' Pizza Hut franchise stores have not collected receipts of delivery drivers' monthly or annual automobile insurance costs.

160. During some of the relevant time period, Defendants' Pizza Hut franchise stores have not collected receipts of delivery drivers' monthly or annual automobile insurance costs.

161. During all relevant times, Defendants' Pizza Hut franchise stores have not collected receipts of delivery drivers' automobile registration costs.

162. During some of the relevant time period, Defendants' Pizza Hut franchise stores have not collected receipts of delivery drivers' automobile registration costs.

163. During all relevant times, Defendants' Pizza Hut franchise stores have not collected receipts of delivery drivers' automobile financing or purchase costs.

164. During some of the relevant time period, Defendants' Pizza Hut franchise stores have not collected receipts of delivery drivers' automobile financing or purchase costs.

165. During all relevant times, Defendants' Pizza Hut franchise stores have not collected any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Pizza Hut franchise stores.

22

166. During some of the relevant time period, Defendants' Pizza Hut franchise stores have not collected any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Pizza Hut franchise stores.

167. During all relevant times, Defendants' Pizza Hut franchise stores have not reimbursed their delivery drivers based on the actual expenses the delivery drivers incur.

168. During some of the relevant time period, Defendants' Pizza Hut franchise stores have not reimbursed their delivery drivers based on the actual expenses the delivery drivers incur.

169. During all relevant times, Defendants' Pizza Hut franchise stores have not reimbursed their delivery drivers for the actual expenses delivery drivers incur.

170. During some of the relevant time period, Defendants' Pizza Hut franchise stores have not reimbursed their delivery drivers for the actual expenses delivery drivers incur.

171. During all relevant times, Defendants' Pizza Hut franchise stores have not reimbursed their delivery drivers at the IRS standard business mileage rate.

172. During some of the relevant time period, Defendants' Pizza Hut franchise stores have not reimbursed their delivery drivers at the IRS standard business mileage rate.

173. During all relevant times, Defendants' Pizza Hut franchise stores have not reasonably approximated the delivery drivers' expenses.

174. During some of the relevant time period, Defendants' Pizza Hut franchise stores have not reasonably approximated the delivery drivers' expenses.

175. During all relevant times, Defendants' Pizza Hut franchise stores' reimbursement payments resulted in reimbursements that are less than a reasonable approximation of actual expenses.

23

176.     During some of the relevant time period, Defendants' Pizza Hut franchise stores' reimbursement payments resulted in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

177.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

   a.     2018: 54.5 cents/mile
   b.     2019: 58 cents/mile
   c.     2020: 57.5 cents/mile
   d.     2021: 56 cents/mile

178.     The delivery drivers at Defendants' Pizza Hut franchise stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

179.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and state law.

180.     Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at Defendants' Pizza Hut franchise stores.

181.     Because Defendants paid their drivers a gross hourly wage close to the applicable minimum wage and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

182.     Defendants have willfully failed to pay federal and state minimum wage to Plaintiff and similarly situated delivery drivers at Defendants' Pizza Hut franchise stores.

183. The delivery drivers at Defendants' Pizza Hut franchise stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

184. Defendants reimbursed their delivery drivers amounts less than they would have had to pay if they rented vehicles each day to use to make deliveries.

185. Defendants reimbursed their delivery drivers amounts less than they would have had to pay to own and maintain a fleet of vehicles to complete their deliveries.

186. Defendants benefit from the delivery drivers spending time off the clock repairing and maintaining their vehicles.

187. Defendants benefit from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

188. The delivery drivers at Defendants' Pizza Hut franchise stores have conferred a benefit on Defendants.

189. Defendants were aware of the benefits conferred on them by their delivery drivers and accepted them.

190. It is unjust for Defendants to retain that benefit without fully compensating the delivery drivers for it.

191. Upon information and belief, Defendants are liable as successors in interest for damages suffered by Plaintiff and the delivery drivers at Defendants' Pizza Hut franchise stores during all relevant times while Defendants' Pizza Hut franchise stores were owned and operated by the Predecessor Entities and Predecessor Individuals (collectively, "the Predecessors") because:

a. Upon information and belief there is an express or implied agreement by Defendants to assume the Predecessors' liability; or

b. Upon information and belief, the transfer from Predecessor to Defendants was a de facto merger; or

c. Upon information and belief, Defendants' business is a mere continuation of the Predecessors' business.

## Plaintiff's Individual Factual Allegations

**April Atwood**

192. Plaintiff April Atwood worked at Defendants' Pizza Hut store in Hickory, North Carolina from approximately January 2015 to January 2020.

193. Plaintiff Atwood worked approximately 36 hours per week on average.

194. Upon information and belief, when working as a delivery driver, Plaintiff Atwood was paid a wage of $8.00 per hour for all hours worked.

195. Plaintiff Atwood worked dual jobs for Defendants—one during which she made deliveries, and another during which she worked inside the store helping with general tasks around the store.

196. Plaintiff Atwood was required to use her own car to deliver pizzas.

197. Upon information and belief, Plaintiff Atwood was reimbursed at a per delivery reimbursement rate of $0.50 for each order she delivered from January 2015 to December 2019.

198. Upon information and belief, from December 2019 to January 2020, Plaintiff Atwood was reimbursed at a per delivery reimbursement rate of $1.00 for each order she delivered.

199. Plaintiff Atwood was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

26

200.     Plaintiff Atwood was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

201.     Plaintiff Atwood has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

202.     During times when Plaintiff Atwood was not on the clock or otherwise being paid by Defendants, she put gasoline in her vehicle, took her vehicle for maintenance and repairs, stored her vehicle, registered and insured her vehicle, and completed other tasks relating to the ownership and maintenance of her vehicle that benefited Defendants. If Defendants owned their own fleet of vehicles, Defendants would have had to complete or pay someone to complete all of these tasks.

203.     Defendants did not track the actual expenses incurred by Plaintiff Atwood.

204.     Defendants did not ask Plaintiff Atwood to provide receipts of the expenses she incurred while delivering pizzas for Defendants.

205.     Defendants did not reimburse Plaintiff Atwood based on her actual delivery-related expenses.

206.     Plaintiff Atwood was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

207.     Defendants did not reimburse Plaintiff Atwood based on a reasonable approximation of her expenses.

208. Plaintiff Atwood completed an average of approximately 2.5 deliveries per hour.

209. Plaintiff Atwood estimates that she drove an average of at least 10 miles per delivery.

210. Thus, Defendants' average effective per mile reimbursement rate, derived from her per delivery reimbursement rate of $0.50 per delivery, for Plaintiff Atwood was approximately $0.05 per mile ($0.50 per delivery ÷ 10 average miles per delivery).

211. In 2019, for example, the IRS business mileage reimbursement was $0.58 per mile.

212. Thus, during 2019, Defendants under-reimbursed Plaintiff Atwood by approximately $0.53 ($0.58 - $0.05) per mile. Defendants under-reimbursed her by approximately $5.30 per delivery ($0.53 × 10).

213. Accordingly, while making deliveries, Plaintiff Atwood consistently "kicked back" to Defendants approximately $13.25 per hour ($5.30 × 2.5 deliveries per hour).

214. After accounting for under-reimbursed expenses, Defendants failed to pay Plaintiff Atwood minimum wage as required by law.

215. Defendants did not reasonably approximate Plaintiff Atwood's vehicle expenses.

### Collective Action Allegations

216. Plaintiff brings the First Count on behalf of herself and all similarly situated current and former delivery drivers employed at Defendants' Pizza Hut franchise stores owned, operated, and controlled by Defendants in Illinois, Kentucky, Massachusetts, New Hampshire, New York, North Carolina, South Carolina, Tennessee, Virginia, and West Virginia, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

28

217. At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

218. Defendants' unlawful conduct is pursuant to a company policy or practice.

219. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

220. Defendants' unlawful conduct has been widespread, repeated, and consistent.

221. The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

222. The FLSA Collective members are readily identifiable and ascertainable.

223. In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### North Carolina Class Action Allegations

224. Plaintiff Atwood brings the Second, Third, and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Pizza Hut franchise stores in North Carolina between the date two years prior to the filing of the original complaint and the date of final judgment in this matter ("North Carolina Wage Class").

29

225.    Plaintiff Atwood brings the Fifth Count under Federal Rule of Civile Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Pizza Hut franchise stores in North Carolina between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("North Carolina Unjust Enrichment Class") (together with the North Carolina Wage Class, the "Rule 23 Classes").

226.    Excluded from the Rule 23 Classes are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Classes.

227.    The number and identity of the North Carolina Wage Class members are ascertainable from Defendants' records.

228.    The number and identity of the North Carolina Unjust Enrichment Class members are ascertainable from Defendants' records.

229.

230.    For the purpose of notice and other purposes related to this action, the names and contact information for the members of the Rule 23 Classes are readily available from Defendants.

231.    Notice can be provided by means permissible under Rule 23.

232.    The members of the Rule 23 Classes are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

233.    There are more than 50 North Carolina Wage Class members.

234.    There are more than 50 North Carolina Unjust Enrichment Class members.

30

235.     Plaintiff Atwood's claims are typical of those claims which could be alleged by any member of the Rule 23 Classes, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 Classes in separate actions.

236.     Plaintiff Atwood and the North Carolina Wage Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the North Carolina Wage and Hour Act, N.C. Gen. Stat. 95-25.1, *et seq.*

237.     Plaintiff Atwood and the North Carolina Unjust Enrichment Class members have all unjustly enriched Defendants in the same way.

238.     Plaintiff Atwood and the members of the Rule 23 Classes sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

239.     Plaintiff Atwood is able to fairly and adequately protect the interests of the North Carolina Wage Class and has no interests antagonistic to the North Carolina Wage Class.

240.     Plaintiff Atwood is able to fairly and adequately protect the interests of the North Carolina Unjust Enrichment Class and has no interests antagonistic to the North Carolina Unjust Enrichment Class.

241.     Plaintiff Atwood is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

242.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum

31

simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

243. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

244. The North Carolina Wage Class and the North Carolina Unjust Enrichment Class are properly treated as subclasses pursuant to Rule 23(c)(5).

245. Common questions of law and fact exist as to the North Carolina Wage Class that predominate over any questions only affecting Plaintiff Atwood and the North Carolina Wage Class members individually and include, but are not limited to:

    a. Whether Plaintiff Atwood and the North Carolina Wage Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

    b. Whether Plaintiff Atwood and the North Carolina Wage Class members were subject to a common automobile expense reimbursement policy;

    c. Whether Plaintiff Atwood and the North Carolina Wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    d. Whether Defendants reimbursed Plaintiff Atwood and the North Carolina Wage Class members for their actual expenses;

    e. Whether Defendants reimbursed Plaintiff Atwood and the North Carolina Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

    f. Whether Defendants properly reimbursed Plaintiff Atwood and the North Carolina Wage Class members;

    g. Whether Plaintiff Atwood and the North Carolina Wage Class were actually paid the wage rate they were promised by Defendants after accounting for automobile expenses and reimbursement payments;

32

h. Whether Defendants failed to pay Plaintiff Atwood and the North Carolina Wage Class in a timely manner as described by the North Carolina Wage and Hour Act, N.C. Gen. Stat. 95-25.1, *et seq.*;

i. Whether Plaintiff Atwood and the North Carolina Wage Class members worked dual jobs;

j. The nature and extent of class-wide injury and the measure of damages for those injuries.

246. Common questions of law and fact exist as to the North Carolina Unjust Enrichment Class that predominate over any questions only affecting Plaintiff Atwood and the North Carolina Unjust Enrichment Class members individually and include, but are not limited to:

a. Whether Plaintiff Atwood and the North Carolina Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

b. Whether Plaintiff Atwood and the North Carolina Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

c. Whether Plaintiff Atwood and the North Carolina Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d. Whether Plaintiff Atwood and the North Carolina Unjust Enrichment Class conferred a measurable benefit on Defendants;

e. Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiff and the Unjust Enrichment Class providing cars to use to make deliveries;

f. How much it would have cost Defendants to operate their business but for Plaintiff and the Unjust Enrichment Class providing cars to use to make deliveries;

g. Whether Defendants were aware of the benefit that was being conferred on them by Plaintiff and the Unjust Enrichment Class;

h. The nature and extent of class-wide injury and the measure of damages for those injuries.

33

247.    In recognition of the services Plaintiff Atwood has rendered and will continue to render to the Rule 23 Classes, Plaintiff Atwood will request payment of a service award upon resolution of this action.

**Causes of Action**

**Count 1**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

248.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

249.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

250.    By failing to pay Plaintiff and the FLSA Collective the minimum wage for the hours they worked on the road making deliveries, Defendants have violated the FLSA.

251.    Plaintiff and the FLSA Collective worked in dual jobs—one during which they worked outside the store delivering pizzas, and another during which they worked inside the store completing general tasks.

252.    Defendants paid Plaintiff and the FLSA Collective at or close to the wage for all hours completing deliveries outside the store.

253.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

254.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

255. Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

256. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages – N.C. Gen. Stat. § 95-25.3**
**(On Behalf of Plaintiff Atwood and the North Carolina Wage Class)**

257. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

258. Plaintiff Atwood and the North Carolina Wage Class are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

259. By failing to pay Plaintiff Atwood and the North Carolina Wage Class the minimum wage for hours worked on the road making deliveries, Defendants have violated N.C. Gen. Stat. § 95-25.3.

260. Defendants paid Plaintiff Atwood and the North Carolina Wage Class at or close to the minimum wage for all hours completing deliveries outside the store.

261. Defendants required and continue to require Plaintiff Atwood and the North Carolina Wage Class to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff Atwood and the North Carolina Wage Class for said expenses.

262. By the acts and conduct described above, Defendants willfully violated N.C. Gen. Stat. § 95-25.3 and disregarded the rights of Plaintiff Atwood and the North Carolina Wage Class.

35

263. Plaintiff Atwood and the North Carolina Wage Class have been damaged by Defendants' willful failure to pay minimum wage as required by law.

264. As a result of Defendants' willful violations, Plaintiff Atwood and the North Carolina Wage Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, interest, costs, and attorneys' fees.

**Count 3**
**Untimely Payment of Wages – N.C. Gen. Stat. § 95-25.6**
**(On Behalf of Plaintiff Atwood and the North Carolina Wage Class)**

265. Plaintiff Atwood restates and incorporates the foregoing allegations as if fully rewritten herein.

266. The North Carolina Wage and Hour Act states that every employer shall pay every employee all wages and tips accruing to the employee on the regular payday. *See* N.C. Gen. Stat. 95-25.6.

267. By their policy of failing to fully reimburse for their delivery-related expenses, which constitute de facto deductions from pay and by failing to otherwise pay the wages due to Plaintiff Atwood and the North Carolina Wage Class under N.C. Gen. Stat. 95-25.6, Defendants have failed to pay all wages due to their delivery drivers by their regular payday.

268. Defendants did not act in good faith when they violated the North Carolina Wage and Hour Act.

269. Plaintiff Atwood and the North Carolina Wage Class are entitled to their unpaid wages and unlawful deductions, liquidated damages in an amount equal to their unpaid wages and unlawful deductions, and interest for the two years preceding the filing of the complaint in this matter.

36

270.     Plaintiff Atwood and the North Carolina Wage Class are further entitled to recover attorneys' fees and costs.

271.     As a result of Defendants' willful violations, Plaintiff Atwood and the North Carolina Wage Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, interest, costs, and attorneys' fees.

**Count 4**
**Withholding of Wages – N.C. Gen. Stat. § 95-25.8**
**(On Behalf of Plaintiff Atwood and the North Carolina Wage Class)**

272.     Plaintiff Atwood restates and incorporates the foregoing allegations as if fully rewritten herein.

273.     The North Carolina Wage and Hour Act states than an employer is permitted to withhold a portion of an employee's wages provided that the employer has written authorization from the employee which is signed on or before the payday for the pay periods for which the deduction is made; indicated the reason for the deduction; and states the actual dollar amount of wages which shall be deducted from one or more paychecks. *See* N.C. Gen. Stat. 95-25.8(a)(2).

274.     Defendants have not obtained written authorization from the Plaintiff Atwood or the North Carolina Wage Class to withhold a portion of their wages to cover their delivery-related expenses, which constitute de facto deductions from pay.

275.     Defendants have not obtained written authorization from Plaintiff Atwood or the North Carolina Wage Class to withhold a portion of their wages.

276.     Defendants did not act in good faith when they violated the North Carolina Wage and Hour Act.

37

277. Plaintiff Atwood and the North Carolina Wage Class are entitled to their unpaid wages and unlawful deductions, liquidated damages in an amount equal to their unpaid wages and unlawful deductions, and interest for the two years preceding the filing of the complaint in this matter.

278. Plaintiff Atwood and the North Carolina Wage Class are further entitled to recover their attorneys' fees and costs.

279. As a result of Defendants' willful violations, Plaintiff Atwood and the North Carolina Wage Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, interest, costs, and attorneys' fees.

**Count 5**
**Unjust Enrichment**
**(On Behalf of Plaintiff Atwood and the North Carolina Unjust Enrichment Class)**

280. Plaintiff Atwood restates and incorporates the foregoing allegations as if fully rewritten herein.

281. Plaintiff Atwood and the North Carolina Unjust Enrichment Class have conferred a benefit on Defendants by providing their own vehicles to use while completing deliveries for Defendants.

282. If it were not for Plaintiff Atwood and the North Carolina Unjust Enrichment Class providing cars to use to make Defendants' deliveries, Defendants would have been required to rent or purchase their own fleet of vehicles.

283. The benefits Plaintiff and the North Carolina Unjust Enrichment Class provided to Defendants were not gratuitous.

38

284.    The benefits Plaintiff and the North Carolina Unjust Enrichment Class provided to Defendants are measurable.

285.    Defendants are aware of and have accepted the benefit conferred on them by Plaintiff Atwood and the North Carolina Unjust Enrichment Class.

286.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by Plaintiff Atwood and the North Carolina Unjust Enrichment Class without commensurate compensation.

**WHEREFORE**, Plaintiff April Atwood prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and her counsel to represent the collective action members.

B.    Unpaid wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.    Designation of Plaintiff Atwood as representative of the North Carolina Wage Class and the North Carolina Unjust Enrichment Class and counsel of record as Class Counsel of both Rule 23 Classes.

E.    An award of unpaid minimum wages, unpaid wages, and unreimbursed expenses due under N.C. Gen. Stat. § 95-25.22.

F.    Liquidated damages under N.C. Gen. Stat. § 95-25.22.

39

G.      An award of interest under N.C. Gen. Stat. § 95-25.22.

H.      An award of restitution for unjust enrichment to the North Carolina Unjust Enrichment Class.

I.      An award of prejudgment and post-judgment interest.

J.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

K.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Mary-Ann Leon*
Mary-Ann Leon
N.C. State Bar No. 26476
THE LEON LAW FIRM, P.C.
704 Cromwell Dr., Ste E
Greenville NC 27858
Telephone: (252) 830-5366
maleon@leonlaw.org
www.leonlaw.org
Local Rule 83.1(d) Counsel

Andrew R. Biller (Ohio Bar # 0081452) (*pro hac vice* forthcoming)
Andrew P. Kimble (Ohio Bar # 0093172) (*pro hac vice* forthcoming)
Riley E. Kane (Ohio Bar # 0100141) (*pro hac vice* forthcoming)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8714
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*rkane@billerkimble.com*

www.billerkimble.com

40

*Counsel for Plaintiff and the putative class*

41

### Jury Demand

Plaintiff hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ *Mary-Ann Leon*
Mary-Ann Leon